UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        No. 1:20-CR-183-03

    vs.                                  Hon. Robert J. Jonker
                                                    Chief United States District Judge

TY GERARD GARBIN,

        Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

May it please the Court, the United States submits the following memorandum for the Court's reference in determining an appropriate sentence:

1.      <u>Facts and Procedural History</u>:

Between June and October of 2020, defendant Garbin and his co-defendants conspired to kidnap the Governor of Michigan. (R. 86: Indictment, PageID.573.) On January 27, 2021, Garbin pled guilty to kidnapping conspiracy in violation of 18 U.S.C. § 1201(c). (R. 143: Minutes of Change of Plea, PageID.759.) The presentence report and factual basis section of Garbin's plea agreement accurately summarize his role in the offense. (R. 214: PSR, PageID.1132-1144; R. 142: Plea Agreement, PageID.745.)

Approximately 50 days lapsed between Garbin's preliminary examination and the proffer session during which he expressed his intent to plead guilty. (R. 46: Minutes of Cont'd Prelim. Hr'g., PageID.265.) Garbin's decision to accept responsibility preceded the first indictment, and came before the government was obligated to provide discovery under Fed. R. Crim. P. 16(a).

2. <u>Guideline Issues</u>:

There are no disputed guideline issues. Based on a total offense level of 35 and a criminal history category of I, Garbin's advisory sentencing range is 168-210 months. The government will move for a four-level downward departure under USSG § 5K1.1 to recognize Garbin's substantial assistance thus far. If this Court grants the motion, the range would be reduced to 108-135 months. For the reasons discussed below, the government recommends a sentence at the low end of the guideline range (9 years).

3. <u>Statutory Sentencing Factors</u>:

The Court is required to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the court must consider, among other things:

> *a.  The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553(a)(1)):*

The nature and circumstances of the offense are known to the Court from the indictment, plea agreement, and presentence report. Until this offense, Garbin had been a law abiding, productive member of society. He quickly accepted responsibility for his offense after the initial proceedings. He would have been within his rights to wait until he had reviewed the discovery, or until the court had ruled on whatever motions he could file. But Garbin did not wait to see what his chances were of escaping accountability. He knew what he had done, knew it was wrong, and took action.

To paraphrase another district court, the sentence should encourage the same conduct from others who are ready to accept responsibility for their illegal actions even though they may believe they have a plausible argument for challenging certain evidence or the strength of the case. *See, United States v. Stewart*, 154 F. Supp. 2d 1336, 1343 (E.D. Tenn. 2001). "A free and

honest admission of guilt is perhaps the first and largest step toward ultimate rehabilitation."
*United States v. Derrick*, 519 F.2d 1, 4 (6th Cir. 1975). Despite his relative youth, Garbin has shown maturity by proactively taking ownership of his situation.

>    b.   *The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A)):*

The seriousness of a plot to kidnap an elected Governor is hard to overstate. Contrary to the recent suggestion of some of Garbin's co-defendants, the plot was more than an exercise in free speech. The conspirators spent most of their free time and money acquiring battlefield weapons, and traveling interstate to plan and practice for the abduction. Croft, Fox, and Harris made improvised explosive devices with shrapnel, which they tested on human silhouette targets. Croft provided a projectile launcher to kill the Governor's security detail. The conspirators constructed a mockup "kill house" to train for the assault, and drove hours to conduct a nighttime reconnaissance of Governor Whitmer's house. As their own surveillance photos and video recordings prove, they were within yards of her front door on two separate occasions.

While the law should guard even unpopular opinions from state censorship, it must also protect the peace. Those who occupy public office must be prepared for criticism in the public forum. But the victim's office does not excuse conduct we would not hesitate to condemn in any other situation: Imagine the conspirators were stalking a member's estranged ex-wife, or a business rival. No one would hesitate to declare it out-of-bounds to train with weapons and case her house at night. That the defendants' motive riddled with distorted notions about the American Revolution does not imbue their actions with Constitutional protection. Free expression crosses a line when the abductors are actually measuring the response time from the nearest police station.

Some conspirators also suggested at the preliminary examination that they lacked the skill to pull off the kidnapping, or that they had not fully thought through their objectives. These are not mitigating factors, and we need look no further than the events of January 6, 2020 for an illustration. The rioters there failed to stop Congress from certifying the election, but they certainly demonstrated that amateurs can kill first responders and destroy property.

As the Supreme Court has noted, conspiracies are dangerous for reasons that go beyond their underlying object:

> [C]ollective criminal agreement – partnership in crime – presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Callanan v. United States*, 364 U.S. 587, 593-94, 81 S. Ct. 321, 325 (1961).

The offense in this case was no less serious because it was inchoate. The members of the group egged each other on, whipping themselves into frenzy of deluded righteousness. They did things together that some of them might not have done alone, including making bombs and driving the highways with concealed, illegal assault weapons.

The Supreme Court's concern about "other crimes unrelated to the original purpose" is particularly apt in this case, where the method and means continually morphed. The conspirators had already abandoned Fox's earlier plans to assault the State Capitol in Lansing, judging it a "hard target." They entertained ideas like Harris's suggestion that one of them dress as a pizza delivery man, and "cap" Governor Whitmer at her front door. Left unchecked, the conspirators

4

might have successfully kidnapped her. They might also have botched the job, panicked, and killed her or a family member. Or shot a state trooper who stopped them with illegal assault weapons in the car. Or accidentally blown up a bystander. The possible permutations were numerous, and all were more likely because of the conspiracy.

        c.        *The need for the sentence imposed to afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B)):*

The conspirators were adherents of the "boogaloo" ideology, which holds the collapse of civil order is not only imminent, but desirable. Such accelerationist groups are widespread and proliferating. As the Capitol riots demonstrated, an inchoate conspiracy can turn into a grave substantive offense on short notice. A guideline sentence will discourage those who would walk up to that line. An insufficient sentence will encourage such groups to plot and prepare, with all the attendant risks identified by the Supreme Court in *Callanan*.

We have arrived at a perilous moment when trust in our civic institutions is at a low ebb. In less stable democracies elected officials, judges, and civil servants are routinely targeted by ideological enemies and criminal cartels. Where such disorder is tolerated, fewer people of integrity are willing to serve, and public trust is further diminished. In order that we not begin down that path, the sentence should send a clear message of deterrence.

CONCLUSION

For the foregoing reasons, the government requests the Court impose a guideline sentence. In recognition of Garbin's early acceptance of responsibility and substantial assistance, the government asks that it be at the low end of the advisory range.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: August 18, 2021   /s/ Nils R. Kessler
NILS R. KESSLER
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404