1          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF MICHIGAN
2               SOUTHERN DIVISION

3   _____

4   UNITED STATES OF AMERICA,

5                     Plaintiff,
                                   DOCKET NO. 1:20-cr-183
6   vs.

7
    TY GERARD GARBIN,
8
                      Defendant.
9   _____/

10

11          TRANSCRIPT OF CHANGE OF PLEA HEARING

12      BEFORE THE HONORABLE ROBERT J. JONKER, CHIEF JUDGE

13              GRAND RAPIDS, MICHIGAN

14                 January 27, 2021

15

16  Court Reporter:          Glenda Trexler
                             Official Court Reporter
17                           United States District Court
                             685 Federal Building
18                           110 Michigan Street, N.W.
                             Grand Rapids, Michigan 49503
19

20  Proceedings reported by stenotype, transcript produced by

21  computer-aided transcription.

22

23

24

25

```
1    A P P E A R A N C E S:

2    FOR THE GOVERNMENT:

3         MR. NILS R. KESSLER
          UNITED STATES ATTORNEY'S OFFICE
4         330 Ionia Avenue, N.W.
          P.O. Box 208
5         Grand Rapids, Michigan 49501-0208
          Phone:  (616) 456-2404
6         Email:  Nils.Kessler@usdoj.gov

7         MR. AUSTIN JACOB HAKES
          UNITED STATES ATTORNEY'S OFFICE
8         330 Ionia Avenue, N.W.
          P.O. Box 208
9         Grand Rapids, Michigan 49501-0208
          Phone:  (616) 456-2404
10        Email:  austin.hakes@usdoj.gov

11   FOR THE DEFENDANT:

12        MR. MARK A. SATAWA
          SATAWA LAW, PLLC
13        26777 Central Park Boulevard, Suite 300
          Southfield, Michigan 48076-4172
14        Phone:  (248) 356-8320
          Email: mark@satawalaw.com
15
          MR. GARY K. SPRINGSTEAD
16        SPRINGSTEAD, BARTISH, BORGULA & LYNCH, PLLC
          28A West Main Street
17        Fremont, Michigan 49412
          Phone:  (231) 924-8700
18        Email: gary@sbbllaw.com

19        MS. NICOLE SPRINGSTEAD-STOLTE
          SPRINGSTEAD, BARTISH, BORGULA & LYNCH PLLC
20        60 Monroe Center Street, N.W., Suite 500
          Grand Rapids, Michigan 49503
21        Phone:  (616) 458-5500
          Email: nicole@sbbllaw.com

22
23                       *   *   *   *   *

24

25
```

```
1                                    Grand Rapids, Michigan

2                                    January 27, 2021

3                                    11:01 a.m.

4                        P R O C E E D I N G S

5              THE COURT:  We're here on the case of the

6   United States against Ty Garbin, 1:20-cr-183, and we have an

7   anticipated change of plea.

8              Let's start with appearances, please.

9              MR. KESSLER:  Good morning, Your Honor, Nils Kessler

10  and Austin Hakes for the United States.

11             THE COURT:  All right.  And for any participant

12  today, particularly if you're going to keep your mask on, which

13  is fine, just stay seated and use the microphone right in front

14  of you.  It will be much easier for us to hear you.  Okay?

15             MR. KESSLER:  Yes, Your Honor.

16             THE COURT:  Thank you.

17             For the defense?

18             MR. SATAWA:  Good morning, Your Honor, if it please

19  this Court, Mark Satawa along with Gary Springstead and

20  Nicole Springstead on behalf of the defendant Ty Garbin.

21             THE COURT:  All right.  Thank you.

22             MR. SATAWA:  Good morning.

23             THE COURT:  Good morning.  Welcome everybody.

24             At this point, Mr. Satawa, does your client intend to

25  go ahead under the Plea Agreement?
```

1          *MR. SATAWA:*  He does, Your Honor.

2          *THE COURT:*  All right.  What I want to do,

3    Mr. Garbin, is make sure that you and I can communicate and

4    talk to each other.  If you want to keep your mask on, that's

5    fine too, just make sure that microphone is close in front of

6    you.

7          Before we go to accepting a guilty plea, if that's

8    what you want to do today, I'm going to have to put you under

9    oath.  I'm going to have questions for you that you'll need to

10   answer under oath subject to penalty of perjury if you want to

11   go this route.

12         Do you have any questions about that before we start?

13         *THE DEFENDANT:*  No, Your Honor.

14         *THE COURT:*  All right.  Then we're going to have

15   Ms. Bourque swear you in and we'll get started.

16         *THE CLERK:*  Please raise your right hand.

17                        TY GERARD GARBIN

18                *(The oath was administered)*

19         *THE DEFENDANT:*  I swear.

20         *THE COURT:*  All right.  Mr. Garbin, how old are you?

21         *THE DEFENDANT:*  I'm 25 years old, Your Honor.

22         *THE COURT:*  What city do you consider home?

23         *THE DEFENDANT:*  I reside in Hartland, Michigan, and

24   grew up in Wyandotte, Michigan, Your Honor.

25         *THE COURT:*  All right.  So east side of the state of

1    Michigan?

2              THE DEFENDANT:  That's correct, Your Honor.

3              THE COURT:  Born and raised a Michigander.

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Where did you go to high school?

6              THE DEFENDANT:  Wyandotte Roosevelt in Wyandotte,

7    Michigan.

8              THE COURT:  Graduate from there?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Any college or any education after high

11   school?

12             THE DEFENDANT:  I attended a trade school for

13   aviation maintenance in Canton, Michigan, called MIAT.

14             THE COURT:  Okay.  And did you get a certificate,

15   degree, or complete a program there?

16             THE DEFENDANT:  A certificate, Your Honor.

17             THE COURT:  In what?

18             THE DEFENDANT:  Aviation maintenance.

19             THE COURT:  Okay.  Today you're here with a number of

20   lawyers.  Mr. Satawa is sitting right next to you and then

21   Mr. and Ms. Springstead are nearby.  These are lawyers you've

22   retained in the case; is that right?

23             THE DEFENDANT:  That's correct, Your Honor.

24             THE COURT:  Have you been able to talk with one or

25   all of them about this case and your decisions in the case?

6

1                    *THE DEFENDANT:*  Yes, Your Honor.

2                    *THE COURT:*  Do you feel like they have been able to

3    give you good advice?

4                    *THE DEFENDANT:*  Yes, Your Honor.

5                    *THE COURT:*  Have they been able to answer all your

6    questions?

7                    *THE DEFENDANT:*  Yes, Your Honor.

8                    *THE COURT:*  Do you need any more time to consult with

9    them before you proceed today?

10                   *THE DEFENDANT:*  No, Your Honor.

11                   *THE COURT:*  Do you feel like you've had time to think

12   about your options and make a choice that you believe is best

13   for you?

14                   *THE DEFENDANT:*  Yes, Your Honor.

15                   *THE COURT:*  All right.  As you sit here this morning,

16   Mr. Garbin, do you feel like you're in a frame of mind to make

17   an important decision about your future?

18                   *THE DEFENDANT:*  Yes, Your Honor.

19                   *THE COURT:*  Anything interfering with your ability to

20   think clearly?

21                   *THE DEFENDANT:*  No, Your Honor.

22                   *THE COURT:*  Okay.  Do you feel like you're ready to

23   proceed?

24                   *THE DEFENDANT:*  Yes, Your Honor.

25                   *THE COURT:*  Mr. Satawa, do you have any concerns

1 | about competence?

2 | *MR. SATAWA:*  I do not, Your Honor.

3 | *THE COURT:*  For the government, Mr. Kessler?

4 | *MR. KESSLER:*  No, Your Honor.

5 | *THE COURT:*  I don't either.  From what I can see and

6 | hear, Mr. Garbin is fully competent to proceed.  He's alert,

7 | focused, oriented in the way that he's presenting himself

8 | today.  His answers to my questions are direct and responsive,

9 | and I am satisfied that he's ready, willing, and able to make

10 | the decisions he needs to make.

11 | Where I want to start, Mr. Garbin, is with the charge

12 | that the government of the United States has made against you.

13 | It's in the Indictment.  It's entitled "kidnapping conspiracy."

14 | And the basic charge is that you and others were part of a

15 | conspiracy to commit federal kidnapping with the intended

16 | victim being the governor of the state of Michigan.

17 | Have you gone through that document with your

18 | lawyers?

19 | *THE DEFENDANT:*  Yes, Your Honor.

20 | *THE COURT:*  Do you have any questions about it?

21 | *THE DEFENDANT:*  No, Your Honor.

22 | *THE COURT:*  Now, you've already entered a plea of not

23 | guilty to this charge, of course, and you have the right to

24 | maintain that plea of not guilty and to go to trial and see if

25 | the government can prove this case or not.

8

1           Do you understand that?

2           *THE DEFENDANT:*  I understand, Your Honor.

3           *THE COURT:*  Of course, if you go ahead with the

4 Plea Agreement and at end of this hearing you plead guilty and

5 I accept that, then there isn't going to be a trial in your

6 case, you'll simply stand convicted based on your guilty plea

7 today.

8           Do you understand that?

9           *THE DEFENDANT:*  I understand, Your Honor.

10          *THE COURT:*  And at least subject to the discussion

11 we're about to have, that's your intent as you start out this

12 hearing, to plead guilty?

13          *THE DEFENDANT:*  That's correct, Your Honor.

14          *THE COURT:*  Let me just highlight for you the basic

15 elements that the government would have to prove to a jury

16 beyond reasonable doubt if you decide to go to trial, because

17 that's what you're giving up today, and I want to make sure you

18 understand in a basic way what the government would have to

19 prove.

20          In any conspiracy the first and critical element that

21 the government would have to prove is that there was an

22 agreement or understanding of some kind involving at least two

23 people.  That's the heart of a conspiracy.

24          Second, the government would have to prove that the

25 agreement or understanding was illegal in some way, and here

1    the government says the agreement was illegal because its

2    object, its purpose was the kidnapping of Governor Whitmer.

3            And then finally the government would have to prove

4    that at least one member of the conspiracy did at least one

5    thing concretely to make the purpose of the conspiracy come to

6    fruition.  We call that the overt act.  Those are the things

7    that the government would have to prove beyond a reasonable

8    doubt.

9            Do you have questions about any of that?

10           *THE DEFENDANT:*  I do not, Your Honor.

11           *THE COURT:*  All right.  Now, Mr. Garbin, if you went

12   to trial and lost, that's one way to be convicted, or if today

13   you plead guilty and I accept it, that's the other way to be

14   convicted, in either case the Court is going to have to

15   consider and evaluate penalty.

16           Do you understand that?

17           *THE DEFENDANT:*  I understand, Your Honor.

18           *THE COURT:*  And the penalties in this case I want to

19   review with you, and they include imprisonment for any term of

20   years up to life in prison.

21           Do you understand that?

22           *THE DEFENDANT:*  I understand, Your Honor.

23           *THE COURT:*  There's also something called supervised

24   release that the Court has to consider.  It's a period of time

25   where you're not in prison, it's after imprisonment, but you're

```
 1    back in the community living in the community on rules that the

 2    Court sets, and if you break the rules that the Court sets, you

 3    can go to prison for that even if you don't commit a new crime

 4    in the process.

 5              Any questions about that?

 6              THE DEFENDANT:  No questions, Your Honor.

 7              THE COURT:  You can be on supervision for as much as

 8    five years following imprisonment.

 9              Do you understand that?

10              THE DEFENDANT:  I understand, Your Honor.

11              THE COURT:  There are a number of financial

12    consequences that I want to make sure you're aware of.  Things

13    that the Court would have to impose or consider.  They include

14    a special assessment of $100 that's automatically assessed on a

15    felony judgment.  They include a fine.  The fine is in the

16    Court's discretion.  It could be as little as zero, nothing, or

17    it could be as much as $250,000.

18              Any questions about that?

19              THE DEFENDANT:  No questions, Your Honor.

20              THE COURT:  There's also the possibility of

21    restitution.  The idea that if the criminal wrongdoing resulted

22    in concrete damage or harm to some other person, the person

23    could submit a request for restitution, there could be argument

24    about that, but you could be ultimately held accountable for

25    those damages or that amount of money the Court finds necessary
```

1    to compensate a victim.

2              Any questions about that?

3              *THE DEFENDANT:*  No questions, Your Honor.

4              *THE COURT:*  And then the last element of potential

5    penalty I want to make sure you're aware of is forfeiture.

6    Forfeiture is a part of the Court's judgment that requires a

7    person to give up the proceeds of crime or to give up property

8    that was used to help commit the crime.  And in your

9    Plea Agreement, which we'll talk about in more detail later,

10   there's a long list of things that the government says are

11   subject to forfeiture and that you're agreeing to forfeit,

12   including a bunch of property that you own.

13             Do you understand that?

14             *THE DEFENDANT:*  I understand, Your Honor.

15             *THE COURT:*  Any questions about that?

16             *THE DEFENDANT:*  No questions, Your Honor.

17             *THE COURT:*  There's also -- unrelated to any

18   particular penalty that this Court imposes -- consequences that

19   the law simply imposes on its own accord, and I want to make

20   sure particularly on one thing that you realize this.  If you

21   go ahead with this, Mr. Garbin, you'll be a convicted felon

22   today after I accept the plea, and that will mean, among other

23   things, you can't lawfully possess a firearm again, period.

24             Do you understand that?

25             *THE DEFENDANT:*  I understand, Your Honor.

1    THE COURT: And I know firearms have been a focus and

2    interest of yours, but they won't be. You can't at least do

3    that lawfully if you are convicted today by guilty plea ever

4    again.

5         Do you understand that?

6         THE DEFENDANT: I understand that, Your Honor.

7         THE COURT: Okay. That's the penalty array, the

8    things the Court has to consider and evaluate if you go ahead

9    and plead guilty today or if you go to trial and lose. But I

10   also want to spend a little time talking about how the Court

11   goes from those wide penalty ranges to the actual penalty in

12   your case, because any term of years up to life is a big spread

13   for anybody, especially for a 25-year-old, and you can

14   understand that you're facing serious risk here, right?

15        THE DEFENDANT: I understand, Your Honor.

16        THE COURT: Okay. The first step in deciding what

17   your actual sentence will be in federal court will involve

18   calculation of sentencing guidelines.

19        Have you been able to talk to your lawyers about

20   that?

21        THE DEFENDANT: I have, Your Honor.

22        THE COURT: And do you have any questions about that

23   for me today?

24        THE DEFENDANT: I do not, Your Honor.

25        THE COURT: Nobody can guarantee you today,

1    Mr. Garbin, what your final guideline range will be because

2    none of us know for sure.  The best anybody can do is give you

3    a reasonable assessment of a range of outcomes based on

4    experience and what they know about a case.  That's it.  It's

5    just an estimate, not a guarantee.

6               You understand that?

7               THE DEFENDANT:  I understand that, Your Honor.

8               THE COURT:  Have you had those discussions with your

9    lawyer so that they can give you their best judgment about the

10   kind of ranges you're thinking about and facing?

11              THE DEFENDANT:  I have, Your Honor.

12              THE COURT:  All right.  Let me back up, then, and

13   give you a little more general background about the way I'll

14   approach the guidelines, and you make sure this is consistent

15   with what you've heard from your lawyers.  And if you have

16   questions, this is the time to ask me.  Because the guidelines

17   require me to come up with two numbers, one called level of

18   offense and one called criminal history category.

19              Are those topics you've had discussions with your

20   lawyers about?

21              THE DEFENDANT:  Yes, Your Honor.

22              THE COURT:  When I'm looking at criminal history, I'm

23   going to find out if you have a criminal record, and if you do,

24   based on what you've been convicted of, when, and what the

25   sentences were, there will be a score, and the score will

1    correspond to a category.  Criminal history I is the lowest;

2    criminal history VI is the highest.

3              Have you gone through that exercise with your

4    lawyers?

5              *THE DEFENDANT:*  I have, Your Honor.

6              *THE COURT:*  Level of offense is something different.

7    It's designed to try to compare how serious the criminal

8    activity in this case is when compared to all other federal

9    criminal activity.  So every federal crime, including

10   conspiracy to commit a kidnapping, will have a base level or a

11   starting point, and then based on the circumstances of the

12   case, there will be some aggravating factors and some factors

13   in your favor or mitigating factors.  And I'll go through the

14   manual, I'll apply the factors that I think fit your case, both

15   increasing and decreasing, and then I'll do the math at the end

16   of it to come up with one number, the level of offense.

17             Have you gone through that with your lawyers?

18             *THE DEFENDANT:*  I have, Your Honor.

19             *THE COURT:*  Okay.  When I get the final level of

20   offense and the criminal history category, I'm going to use a

21   one-page chart, the guideline chart, and where those numbers

22   come together on the chart, that will be your guideline

23   sentencing range.  It will be in months of imprisonment with a

24   low end and a high end.

25             Have you gone through that with your lawyers?

1           *THE DEFENDANT:*  I have, Your Honor.

2           *THE COURT:*  And do you think you understand the basic

3    mechanics of how that works?

4           *THE DEFENDANT:*  I do, Your Honor.

5           *THE COURT:*  Do you have any questions about that for

6    me?

7           *THE DEFENDANT:*  I do not, Your Honor.

8           *THE COURT:*  When I get the guideline range, that will

9    simply be the starting point, not the ending point.  We will

10   from that guideline range look at a whole array of other

11   factors.  Sometimes we call them departures, and one of the

12   potential departures here we'll discuss later could be a motion

13   from the government to give you credit for substantial

14   assistance.  That will be something that the Court will have to

15   consider if the government files a motion.

16          There might be other factors that we sometimes call

17   Section 3553 factors because that's the statute they are part

18   of.  They have to do with you personally, good and bad, in your

19   25 years.  What about you should the Court know and think about

20   in making this sentencing decision.

21          And then they also include the general factors that

22   go into any sentencing.  What do I think is needed to educate

23   the public, inform the public of what this kind of wrongdoing

24   means.  What do I think is needed to reflect the seriousness of

25   what happened.  What do I think is needed to convince you not

1  to get involved in anything like this again.  Those kinds of

2  general sentencing purposes and the individual factors that

3  have to do with you can all be a part of the Court's sentencing

4  decision to go higher or lower than the guideline range if I

5  think there's a good reason to do that.

6          Have you been able to talk to your lawyers about how

7  factors like that could affect your sentence?

8          THE DEFENDANT:  I have, Your Honor.

9          THE COURT:  Pardon me?  You have?

10         THE DEFENDANT:  I have, Your Honor.

11         THE COURT:  Okay.  And do you feel like you

12 understand what's at stake for you in those factors, or do you

13 have any questions for me about that?

14         THE DEFENDANT:  I understand them, Your Honor.

15         THE COURT:  All right.  Before I go on to another

16 topic, Mr. Garbin, do you have any questions for me at this

17 point about the penalty array that you face if you go ahead

18 with this or how the Court is going to approach sentencing?

19         THE DEFENDANT:  I do not, Your Honor.

20         THE COURT:  Then let me turn to a different topic and

21 get a little more detailed about the specifics of what you give

22 up today if you plead guilty and the specifics of what you

23 won't be able to get back by way of your rights if you plead

24 guilty today, because fundamentally, as we've already talked

25 about, if you plead guilty today, you give up the presumption

1    of innocence and all that goes with it, and right now that

2    presumption protects you.  It means that in the eyes of the law

3    right now you're innocent of what the government has charged

4    you with here, and you stay that way in the eyes of the law

5    unless and until the government proves the case to a jury

6    beyond reasonable doubt.  If you plead guilty today and you

7    give that up and all that goes with it, then you won't get it

8    back in this case.

9              Do you understand that?

10             *THE DEFENDANT:*  I understand that, Your Honor.

11             *THE COURT:*  I'm going to get a little more specific,

12   then, about how that presumption of innocence would play out

13   during a trial if you decided to go that route instead of

14   pleading guilty.  Because during a trial there are a series of

15   procedural protections and rules that would be in place to make

16   sure the presumption of innocence is real and meaningful in

17   your case.  And all of these things you'll give up and won't

18   get back, so it's worth going through them and cataloging them.

19             If you went to trial, which is your absolute right,

20   you would be protected by that presumption of innocence, and

21   we'd start the process by picking a jury of 12 people.  They

22   would be citizens of the Western District of Michigan, and that

23   group would have the responsibility of deciding the case.

24             The government would have to prove the case, and only

25   the government would have a burden of proof in the case.  You

1    would not.  What the government would have to do is prove what

2    it's charged you with and do so beyond a reasonable doubt.  It

3    could not just rely on the words of lawyers.  It would have to

4    bring real evidence to court.  That means people would come and

5    testify under oath, subject to cross-examination by your

6    lawyers, and any other evidence the government wanted to bring

7    to use against you it would have to bring here and present the

8    same way, publicly and in your presence.  Ultimately using just

9    that evidence, publicly presented in your presence, the

10   government would have to convince every one of the 12 jurors,

11   all of them, that you're guilty beyond a reasonable doubt, and

12   the jury would have to unanimously agree on that before you

13   could be convicted and lose the presumption of innocence in the

14   process.  Today, though, if you plead guilty, you'll lose the

15   presumption, you won't have the opportunity for that jury

16   trial, you'll just be convicted based on your guilty plea

17   today.

18           Do you have any questions about that?

19           *THE DEFENDANT:*  I do not, Your Honor.

20           *THE COURT:*  At a trial, Mr. Garbin, as I already

21   said, you would not have any burden of proof.  You would not

22   have to do or say anything to the jury, you would not have to

23   present any evidence, you could just rest on the presumption of

24   innocence if that's what you wanted to do.  And if you did, I

25   would instruct the jury that it cannot in any way hold it

1   against you in deciding whether the government proved its case.

2         You would not have to rest only on the presumption of

3   innocence, though.  If you wanted to at a trial, you could put

4   on an active defense with your own evidence.  You could testify

5   for yourself if you wanted to.  You could present other

6   witnesses and use the power of this Court to get those

7   witnesses here.  You could present any other evidence that you

8   and your lawyers think would help defend the charge.  Once

9   again, today if you go ahead with a guilty plea, you'll give up

10  those options and those opportunities and you won't get them

11  back in this case.

12        Do you have any questions about that?

13        *THE DEFENDANT:*  I do not, Your Honor.

14        *THE COURT:*  Now, you're with a group of retained

15  lawyers today, Mr. Garbin, and you can continue with them as

16  long as you're all satisfied with the arrangement, but I want

17  to make sure you understand that if you can't afford lawyers

18  anymore -- because lawyers, good lawyers in particular, are not

19  cheap -- if you can't afford lawyers but in your heart you

20  really want to go to trial and the only thing that's pushing

21  you to plead guilty is the fact that you think you can't afford

22  to pay lawyers for a trial, then you can still file papers with

23  the Court.  The Court would, if you qualify, appoint somebody

24  to represent you at government expense through a trial if

25  that's what you really want to do.

1          Do you have any questions about that?

2              THE DEFENDANT:  I do not, Your Honor.

3              THE COURT:  Okay.  Let me ask if you have the

4    Plea Agreement in front of you.

5          Do you have that with you, Mr. Garbin?

6              THE DEFENDANT:  I do, Your Honor.

7              THE COURT:  Okay.  I want to look through that with

8    you.  We've certainly covered a fair bit of this already, but

9    it's worth going through it in detail.  But I do want to start

10   on the last page, page 17.  That's the signature page, and it

11   looks like near the top of the page that's your signature:

12   "Ty Garbin."  Is that right?

13             THE DEFENDANT:  That's correct, Your Honor.

14             THE COURT:  And it's got yesterday's date.  You

15   signed it yesterday?

16             THE DEFENDANT:  That's correct, Your Honor.

17             THE COURT:  You had a chance to review it carefully

18   before that?

19             THE DEFENDANT:  That's correct, Your Honor.

20             THE COURT:  There are a series of sentences above

21   your name.  They begin "I have read this agreement and

22   carefully discussed every part of it with my attorney," and

23   there are several more.  Did you read those sentences before

24   you signed?

25             THE DEFENDANT:  I did, Your Honor.

1       *THE COURT:* Were they true when you signed?

2       *THE DEFENDANT:* They were true, Your Honor.

3       *THE COURT:* Do you still want to go ahead with this

4   today?

5       *THE DEFENDANT:* I do, Your Honor.

6       *THE COURT:* Do you have any second thoughts about

7   this?

8       *THE DEFENDANT:* I do not, Your Honor.

9       *THE COURT:* Okay.  Let me go through and touch on

10  each paragraph.  I'm just going to spend time on the ones we

11  haven't really focused on yet and anything else you have

12  questions on.

13          So start with paragraph 1 which is simply the

14  paragraph that says you're going to plead guilty to the charge

15  in the Indictment.

16          Paragraph 2 lays out the elements or things the

17  government would have to prove for winning a conviction.

18          And paragraph 3 lays out the penalty array.

19          Paragraph 4 emphasizes that restitution is a part of

20  the penalty array.

21          And 5 talks about asset forfeiture and

22  accountability.  It lists a number of properties that the

23  government says are subject to forfeiture and that you're

24  agreeing to forfeit.

25          And that carries us all the way over to paragraph 6

1    which I want to stop on a minute.

2            In those first five paragraphs do you have any

3    questions?

4            THE DEFENDANT:  No, Your Honor.

5            THE COURT:  All right.  6 is called "Factual basis of

6    guilt."  It goes on for a number of pages.  And we're going to

7    come back to it, but I need to skip beyond it now and pick up

8    the next paragraph, 7, on page 10, which is "Cooperation in

9    criminal investigations."  And this paragraph says basically

10   that you agree to help the government, help law enforcement

11   achieve its goals by telling them what you know about criminal

12   activity that you've been a part of or that you've seen other

13   people be a part of.

14           Do you understand that?

15           THE DEFENDANT:  I understand, Your Honor.

16           THE COURT:  This might mean that you have to answer

17   the questions of government lawyers or agents truthfully in a

18   private setting somewhere, and you might already have done some

19   of that, but this could also mean someday that you're called to

20   a public courtroom like this, sworn to tell the truth, and then

21   obligated to tell the truth about what you know in the public

22   courtroom, even if it winds up hurting people you know.

23           You understand that?

24           THE DEFENDANT:  I understand that, Your Honor.

25           THE COURT:  And do you think you could do that if it

1    comes to that in this case?

2                *THE DEFENDANT:*  I could, Your Honor.

3                *THE COURT:*  All right.  The next paragraph,

4    paragraph 8 -- let me get back to that a minute -- has a series

5    of promises from the government to you.  The things you're

6    getting in exchange for this.  And the first one says the

7    government agrees it won't bring any other charges against you.

8    It lays out some examples of possible charges.  Saying the only

9    contingency here is that you have to give them what you know

10   about that in advance.  So you can't hold something back.  If

11   you do that, the government could bring charges about that.

12               Any questions about how that first paragraph works?

13               *THE DEFENDANT:*  No, Your Honor.

14               *THE COURT:*  The 8B promise is a guideline promise.

15   Those sentencing guidelines include something called credit for

16   acceptance of responsibility, and you could get up to three

17   points off for that on the level of offense.  And what the

18   government is saying, based on what it knows now it won't get

19   in your way of those three points.

20               Any questions about that?

21               *THE DEFENDANT:*  No questions, Your Honor.

22               *THE COURT:*  8C is called "Proffer protection."  The

23   basic point of paragraph C is to say the government is agreeing

24   it won't use against you, Mr. Garbin, the things you tell them

25   truthfully as long as you're truthful from beginning to end of

1    the process.

2          Do you have any questions about that?

3          *THE DEFENDANT:*  No questions, Your Honor.

4          *THE COURT:*  And then 8D is something we touched on

5    lightly earlier, the possibility of a sentence-reduction

6    motion.  The government here is saying if you provide

7    substantial assistance, if you follow through and do that

8    number 1, and number 2 if it really helps in some tangible way,

9    then the government may choose to file a motion with the Court

10   that says "Judge, please give Mr. Garbin credit at sentencing

11   for the substantial assistance in the form of a lower sentence

12   than the Court would otherwise impose."  That's the basic point

13   of paragraph 8D.

14         Do you have any questions about that?

15         *THE DEFENDANT:*  I do not, Your Honor.

16         *THE COURT:*  I want to highlight a couple things about

17   it, Mr. Garbin, because it's not a promise that the government

18   absolutely will file this motion, only that the government will

19   evaluate your assistance and consider filing the motion.

20         Do you understand that?

21         *THE DEFENDANT:*  I understand that, Your Honor.

22         *THE COURT:*  If it does file the motion, if you

23   convince the government, yes, it's been substantial assistance

24   that's really helped, then it's still like any other motion, a

25   request to the Court, and I would have to make the final

1   assessment on whether I think credit is appropriate and if so

2   how much.

3           Any questions about that?

4           *THE DEFENDANT:*  No questions, Your Honor.

5           *THE COURT:*  Okay.  The next two paragraphs, 9 and 10,

6   really just talk about guidelines which we've already discussed

7   and emphasized.  There's no agreement about the final

8   guidelines.

9           Any questions about those paragraphs?

10          *THE DEFENDANT:*  No questions, Your Honor.

11          *THE COURT:*  Paragraph 11 is called "Waiver of

12  constitutional rights."  It's a summary of the rights I talked

13  to you about earlier that you give up and can't get back in

14  this case if you plead guilty.

15          Any questions about that?

16          *THE DEFENDANT:*  No questions, Your Honor.

17          *THE COURT:*  12 is something we haven't focused on

18  before.  It's called "Limited waiver of appeal and collateral

19  attack."  Normally, Mr. Garbin, you have the right to directly

20  appeal the decisions I make in this case including sentencing

21  decisions.  And normally even after you complete direct appeals

22  you'd have a right to come back to court in something we call a

23  habeas action or a 2255 action in federal court and say

24  "Something went so fundamentally wrong in my criminal case, I

25  need relief in this new case."  That's normally the array of

1   rights you have to challenge the decisions I make here.

2           Do you have any questions about that?

3           THE DEFENDANT:  I do not, Your Honor.

4           THE COURT:  What paragraph 12 is doing is saying

5   you're giving up a lot of those rights -- not all of them but a

6   lot of them -- and you're going to live with the decisions the

7   Court makes without the right to appeal or collaterally attack

8   except for the categories that are specifically preserved in

9   paragraph 12B.

10          Do you understand that?

11          THE DEFENDANT:  I understand that, Your Honor.

12          THE COURT:  So what that means as a practical matter,

13  Mr. Garbin, is if you want to challenge a decision I make in

14  the case down the road, either in a direct appeal or in a

15  habeas, you're going to have to fit the challenge into one of

16  the six categories.  The three at the bottom of page 14 or the

17  three at the top of page 15.

18          Do you understand that?

19          THE DEFENDANT:  I understand that, Your Honor.

20          THE COURT:  And do you feel like you've had time to

21  understand what those categories mean and include?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  Okay.  Paragraph 13 and 14 are two

24  waivers.  One is a FOIA request.  FOIA stands for the Freedom

25  of Information Act and says here is a pathway for people to

1    find out what the government is doing.  If you have rights

2    under that to find out about this case, you're giving them up

3    and are going to agree to find out about this case only through

4    the normal process of criminal law and procedure.  And then the

5    Hyde waiver is something that says if the government is

6    acting -- and the words are "vexatious," "frivolous," or "in

7    bad faith" -- then a person in your position would have the

8    opportunity to seek reimbursement of things like the lawyers'

9    fees that you're paying, and you agree in that Hyde waiver that

10   the government is not behaving that way in this case.

11            Any questions about those two waivers?

12            *THE DEFENDANT:*  No questions, Your Honor.

13            *THE COURT:*  Paragraph 15 says the Court is not a

14   party to this agreement, meaning that I didn't sign it and I

15   won't the way your lawyers did, the government lawyer did, and

16   the way you did.  I'll make an independent assessment about

17   whether I think it's a proper resolution of the case and a fair

18   one and if so what the appropriate sentence is.

19            Questions about that?

20            *THE DEFENDANT:*  No questions, Your Honor.

21            *THE COURT:*  Okay.  16 says the agreement is limited

22   to the parties.  The added point here is that when Mr. Kessler

23   signed this as an assistant United States attorney, he's

24   signing it just for his office.  That's the Western District of

25   Michigan United States Attorney's Office.  And that's the only

1    jurisdiction covered here.

2              Do you have any questions about that?

3              THE DEFENDANT:  No questions, Your Honor.

4              THE COURT:  Okay.  17 says "Consequences of breach."

5    What happens if you decide not to go ahead with this.  And the

6    basic point of 17 is if you don't follow through on your

7    promises, the government isn't bound by its promises either.

8              Any questions about that?

9              THE DEFENDANT:  No questions, Your Honor.

10             THE COURT:  And then the last paragraph, 18, says

11   "This is the complete agreement," meaning everything between

12   you and the government that's affecting your decision to plead

13   guilty is here in this written agreement we've just gone

14   through and there are no side deals of any kind.

15             Any questions about that?

16             THE DEFENDANT:  No questions, Your Honor.

17             THE COURT:  Do you feel, Mr. Garbin, like anybody

18   from the government has made promises or commitments to you

19   outside of this Plea Agreement to get you to plead guilty?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Do you feel like anybody has made

22   promises or commitments to you like that, whether they are from

23   the government or someplace else?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Okay.  Do you feel like anybody has tried

1    to pressure you or push you into this agreement against your

2    will?

3             *THE DEFENDANT:*  No, Your Honor.

4             *THE COURT:*  Do you believe you've had time to think

5    about your options and make a choice that's best for you?

6             *MR. SATAWA:*  Excuse me, Your Honor.

7             *THE COURT:*  Okay.

8         *(Defense counsel conferring with defendant and the*

9    *government's attorney)*

10            All right.  Mr. Satawa and Mr. Kessler have had a

11   chance to talk.  Is there anything that needs to be clarified

12   or amended?

13            *MR. KESSLER:*  No, Your Honor.

14            *THE COURT:*  Mr. --

15            *MR. SATAWA:*  I'm just going to let my client know

16   what we discussed, Your Honor.

17            *THE COURT:*  Fair enough.

18        *(Defense attorney conferring with defendant)*

19            *MR. SATAWA:*  Thank you, Your Honor.

20            *THE COURT:*  Anything else to clarify or amend?

21            *MR. SATAWA:*  No, Your Honor.

22            *THE COURT:*  Okay.  What we were talking about just a

23   moment ago, Mr. Garbin, was that complete agreement paragraph,

24   no side deals, and then we had gone through a couple of

25   questions about promises or commitments from anybody, whether

1    the government or someplace else outside of this agreement

2    that's affecting your decision to plead.  And I think you

3    answered no there are no such promises or commitments.

4              Is that right?

5              THE DEFENDANT:  That's right, Your Honor.

6              THE COURT:  Okay.  Do you feel like anybody has tried

7    to pressure you or push you into this against your will?

8              THE DEFENDANT:  No, Your Honor.

9              THE COURT:  Do you believe you've had time to think

10   about options and make a choice that you believe is best for

11   you?

12             THE DEFENDANT:  I have, Your Honor.

13             THE COURT:  Do you have any questions at all for me

14   at this point?

15             THE DEFENDANT:  I do not, Your Honor.

16             THE COURT:  All right.  From the defense, Mr. Satawa,

17   is there anything else you would like me to explore before we

18   formally take a plea?

19             MR. SATAWA:  There is not, Your Honor.

20             THE COURT:  All right.  Or from the government?

21             MR. KESSLER:  No, Your Honor.

22             THE COURT:  Okay.  Then, Mr. Garbin, what I'm going

23   to do is go back to that original document we looked at, the

24   Indictment which charges you and others with being a part of a

25   kidnapping conspiracy with a target and intended victim being

1   Governor Whitmer, and now I'm going to ask you formally how you
2   plead, guilty or not guilty?
3           THE DEFENDANT:  Guilty, Your Honor.
4           THE COURT:  That's a decision you make strictly of
5   your own free will today?
6           THE DEFENDANT:  That's correct, Your Honor.
7           THE COURT:  You understand if I accept it in a minute
8   after we talk about the factual basis, you'll be judged guilty
9   today of this federal felony?
10          THE DEFENDANT:  I understand, Your Honor.
11          THE COURT:  The only thing we'll have left to do in
12  your case is a sentencing at some later date.
13          Do you recognize that?
14          THE DEFENDANT:  I recognize that, Your Honor.
15          THE COURT:  And at the sentencing the risk you face
16  is a term of imprisonment for any number of years up to life.
17          Do you understand that?
18          THE DEFENDANT:  I understand that, Your Honor.
19          THE COURT:  And even if one of the other people here
20  who is charged with you goes to trial and wins, you're still
21  going to have to show up for that sentencing and face the
22  consequences of this conviction.
23          Do you understand that?
24          THE DEFENDANT:  I understand that, Your Honor.
25          THE COURT:  Do you feel ready to take that on today?

1          *THE DEFENDANT:*  I feel ready, Your Honor.

2          *THE COURT:*  Okay.  I do believe that Mr. Garbin is

3    tendering a plea that's proper in all respects.  I think it's

4    knowing, intelligent, and voluntary.  I'm satisfied that he is

5    fully apprised of the rights he has and is giving up in this

6    process and that he's had a chance to weigh that against the

7    pathways forward for him, one of which would be going to trial

8    and assuming the risks that go with that as well as the

9    opportunities, and I think he's had a chance to weigh that

10   against the Plea Agreement and his decision to proceed under

11   that, and I think the decision he's made is strictly of his own

12   free will.  I don't see any indication of threats, coercion, or

13   other improper influence, nor do I see any indication of

14   undisclosed promises or commitments.  So I think the tender of

15   the plea is proper.

16          The only remaining question is the factual basis.

17   And this isn't the time to get all the facts on the table,

18   Mr. Garbin, but it is the time to get enough so that I'm

19   satisfied there is a factual basis to support the plea.  And

20   that takes me back to paragraph 6 which we skipped in your

21   Plea Agreement.  It starts on page 4 and it really goes on a

22   long ways, all the way to the top of page 11, and it has a lot

23   of detailed factual statements.

24          Have you been able to go through all of those factual

25   statements carefully?

1              *THE DEFENDANT:*  I have, Your Honor.

2              *THE COURT:*  And are you satisfied that all of them

3    are true?

4              *THE DEFENDANT:*  I'm satisfied, Your Honor.

5              *THE COURT:*  Do you have doubts or reservations about

6    anything in there?

7              *THE DEFENDANT:*  Could I speak to my attorney, please?

8              *THE COURT:*  Sure.

9         *(Defense attorney conferring with defendant)*

10             *MR. SPRINGSTEAD:*  Your Honor, in reviewing the

11   Plea Agreement --

12             *THE COURT:*  This is Mr. Springstead.  Just go ahead

13   and pull the microphone close.  Thank you.  Go ahead.

14             *MR. SPRINGSTEAD:*  In reviewing the Plea Agreement

15   with Mr. Garbin, there was one minor correction that he wanted

16   to make --

17             *THE COURT:*  Okay.

18             *MR. SPRINGSTEAD:*  -- to one of the factual assertions

19   on page 7 and that was that the helmet wasn't bulletproof.  It

20   was a helmet, but it wasn't a bulletproof helmet.

21             *THE COURT:*  Which subsection are you looking at on

22   page 7?

23             *MR. SPRINGSTEAD:*  K.

24             *THE COURT:*  All right.  Thank you.  So it starts at

25   the bottom of 6 and then comes over to 7?

1          *MR. SPRINGSTEAD:*  Correct.

2          *THE COURT:*  Very good.  And the correction is at the

3     top you're saying your understanding is Mr. Garbin would want

4     to correct that in what way?

5          *MR. SPRINGSTEAD:*  That it wasn't a bulletproof helmet

6     and rather than being a night-vision scope they were

7     binoculars.

8          *THE COURT:*  Okay.  So let me go to Mr. Garbin a

9     minute.

10         Do you have that paragraph in front of you,

11    Mr. Garbin?

12         *THE DEFENDANT:*  I do, Your Honor.

13         *THE COURT:*  Okay.  So the paragraph or the context of

14    the paragraph is something that happened back on August 23,

15    2020, at a meeting in Lake Orion, and the sentence in

16    particular talks about Mr. Franks and something that he advised

17    the other people there including you, right?

18         *THE DEFENDANT:*  That's correct, Your Honor.

19         *THE COURT:*  And originally the document here says

20    that what Mr. Franks indicated was that he spent money on a

21    bulletproof helmet and a night-vision scope, but in fact what

22    he advised you is that he spent that money on a helmet and on

23    binoculars?

24         *THE DEFENDANT:*  Night-vision binoculars, Your Honor.

25         *THE COURT:*  Night-vision binoculars.  Okay.  With

1    that correction, are you satisfied that everything in that

2    paragraph 6 is true?

3          *THE DEFENDANT:*  I am, Your Honor.

4          *THE COURT:*  Okay.  I'm not going to go through all of

5    it, but in a general way what I took from reading the lengthy

6    paragraph is that at least by the start of the middle of

7    June 2020 all the way up to the date of your arrest in October

8    there was a group of people -- more than one -- people who had

9    an understanding or agreement to try to kidnap

10   Governor Whitmer; is that right?

11         *THE DEFENDANT:*  That's correct, Your Honor.

12         *THE COURT:*  Okay.  And you were part of that; is that

13   right?

14         *THE DEFENDANT:*  That's correct, Your Honor.

15         *THE COURT:*  And at least one of the people involved

16   took concrete action toward making that happen such as

17   surveilling her house at night.  Is that right?

18         *THE DEFENDANT:*  That's correct, Your Honor.

19         *THE COURT:*  And you were part of that too?

20         *THE DEFENDANT:*  I was, Your Honor.

21         *THE COURT:*  Okay.  You got involved of your own free

22   will?

23         *THE DEFENDANT:*  I did, Your Honor.

24         *THE COURT:*  Okay.  Nobody forced you into it?

25         *THE DEFENDANT:*  That's correct, Your Honor.

1              *THE COURT:*  And you knew what you were doing?

2              *THE DEFENDANT:*  That's correct, Your Honor.

3              *THE COURT:*  Okay.  Mr. Kessler, are you satisfied

4    with the factual basis for today?

5              *MR. KESSLER:*  Yes, Your Honor.

6              *THE COURT:*  Mr. Satawa?

7              *MR. SATAWA:*  Yes, Your Honor.

8              *THE COURT:*  Okay.  I am too.  I think from what

9    Mr. Garbin has indicated here directly and what is detailed in

10   the Plea Agreement there is a factual basis to support the

11   plea.  I'm going to accept your plea of guilty, then,

12   Mr. Garbin.  It means you're judged guilty of the offense

13   today.  You are going to face a sentencing on a later date as

14   we talked about, and at least before we leave today we'll have

15   Ms. Bourque give us a date for that.

16             Between now and that date there's going to be a

17   probation officer who prepares a report called a

18   presentence report.  It will go into greater detail about

19   what's happened here, about what happened in the case, about

20   you and your history.  The report will include a guideline

21   calculation and a sentencing recommendation.  It eventually

22   comes to me.  First, though, it goes to you and your lawyers.

23   Please go through it carefully.  Make sure you're satisfied

24   that what you see there is accurate.  If you see something that

25   needs a correction, say so.  If you think something needs more

1    context, say that.  If you think something is missing, say

2    that.  So the kinds of things that we talked about just a

3    minute ago, you know, it wasn't a bulletproof helmet, for

4    example, or it was night-vision binoculars not a night-vision

5    scope, take the same kind of care with what you see in the

6    presentence report so that when the document comes to me I can

7    be sure it's accurate and reliable.  And if there's something

8    you just can't work out, you just don't agree with the

9    government and the probation officer, you can bring issues like

10   that to sentencing.  I'll resolve the issues at sentencing.

11        So that's what's going to happen between now and a

12   sentencing date.  At that sentencing you'll have a chance to

13   speak for yourself if you want to.  The lawyers, of course,

14   will speak.  Victims are invited to come and testify or speak

15   if they wish.  They don't have to.  And only after everybody

16   who has a right to speak has been heard will the Court impose

17   sentence at the hearing.

18        Do you have any questions about that process?

19        *THE DEFENDANT:*  I do not, Your Honor.

20        *THE COURT:*  Okay.  One other thing I just want to

21   touch on on factual basis.  I think the facts are here, but

22   from a federal point of view I did want to highlight or give

23   Mr. Kessler a chance to highlight the interstate nexus which I

24   think would be the essential element that gives the Court

25   jurisdiction.  So if you want to highlight the nexus point, I

1   think that would be worthwhile doing on the record.

2         *MR. KESSLER:*  Yes, Your Honor.  There are two primary

3   things in this factual basis that would establish interstate

4   nexus.  One of which is that they used encrypted internet

5   communications to communicate with each other which is covered

6   here, and the other is that one of the conspirators traveled

7   from one state to another.  At least one did.  Mr. Croft, as is

8   mentioned in here, traveled from Delaware to meet with the

9   conspirators in Wisconsin and in Michigan.  And there's also a

10  paragraph that indicates the defendant himself traveled to Ohio

11  to meet with other militia members.

12        *THE COURT:*  All right.  Thank you.

13        Is there anything else from any party's perspective

14  that we need to do today before we get the date from

15  Ms. Bourque?

16        *MR. KESSLER:*  No, Your Honor.

17        *THE COURT:*  Mr. Satawa?

18        *MR. SATAWA:*  No, Your Honor.  Thank you.

19        *THE COURT:*  Can we leave the parties with a date,

20  please, Ms. Bourque?

21        *THE CLERK:*  July 8 at 3:00.

22        *THE COURT:*  July 8 at 3:00.  All right.

23        Any questions, Mr. Garbin?

24        *THE DEFENDANT:*  No questions, Your Honor.

25        *THE COURT:*  All right.  We'll see you all later in

1    the year.

2            THE CLERK:  Court is in recess.

3        (Proceeding concluded at 11:42 a.m.)

4                    *   *   *   *   *

5            I certify that the foregoing is a correct transcript

6    from the record of proceedings in the above-entitled matter.

7            I further certify that the transcript fees and format

8    comply with those prescribed by the court and the Judicial

9    Conference of the United States.

10

11   Date:  March 8, 2022

12

13                           **/s/ Glenda Trexler**

14                           _____
                             Glenda Trexler, CSR-1436, RPR, CRR

15

16

17

18

19

20

21

22

23

24

25