UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

        Plaintiff,                        Case No. 20-CR-00183

v.                                           Hon. Robert Jonker

TY GARBIN,

        Defendant.
_____/

**DEFENDANT'S RESPONSE TO THE
GOVERNMENT'S RULE 35 MOTION**

### I.    BACKGROUND

Ty Garbin was arrested on October 7, 2020. R. 214, Presentence Investigation Report (PSR), PageID 1132. Mr. Garbin pled guilty as charged to Conspiracy to Kidnap, 18 USC § 1201(c), pursuant to a Rule 11 plea agreement and contemporaneous cooperation agreement that have been filed with this Court. At sentencing, his offense level was set at 35 before any departures or variances. *Id*. at 1150. An offense level of 35 and a criminal history category I yielded an advisory guideline range of 168 – 210 months. *Id*. at 1156.

At sentencing the Government moved this Court for a four-level downward departure pursuant to § 5K1.1. R. 272, Motion, PageID. 272. The Court granted the

Government's motion, and reduced Mr. Garbin's offense level by four levels. Thus, Mr. Garbin's total offense level was set at 31, prior to any variances. Based on a total offense level of 31 and a criminal history category of I, Mr. Garbin's advisory guideline range was 108 – 135. Thus, Mr. Garbin received a reduction of 60 months, or five years, from his advisory sentencing guideline range. This reduction was based on his cooperation and then testimony before the grand jury (twice), which led to new charges against his codefendants.

The Court then granted the Defense motion for a downward variance and sentenced Mr. Garbin to 75 months imprisonment. R. 300, Judgment, PageID. 1758.

To date, Mr. Garbin has already been incarcerated for nearly two years (702 days).[1] As such, he has approximately four years and three months remaining to be served on his sentence. In its Motion for a Reduction of Sentence, the Government requests a thirty-six month, or three-year, reduction of Mr. Garbin's sentence. R.

---

[1] Inmates incarcerated in the Bureau of Prisons receive up to 54 days per year of "good time" off their sentence. Mr. Garbin has been held exclusively in the custody of various county jails after his sentencing, where does not receive any credit for "good time" served. This has been done so he is readily accessible to the Government for debriefings and trial preparation, and apparently will continue until after he testifies in the state trial of others accused of being involved in the kidnapping who were not charged federally. If Mr. Garbin had been sent to the Bureau of Prisons after sentencing, he likely would have received as much as a full two years of "good time" credit, amounting to an additional 108 days off his sentence, depending when he was designated to the custody of the BOP, bringing the total amount of time-served to date to 810 days, or more than two years.

732, Motion for Reduction, PageID. 9044. If the Government's request were granted, Mr. Garbin would have approximately 15 months remaining to be served on his sentence.

## ARGUMENT

As the following argument will demonstrate, Mr. Garbin has earned and deserves a greater reduction of his sentence for his extraordinary cooperation than requested by the Government; therefore, Mr. Garbin respectfully requests a reduction of his sentence by approximately 51 months so that he is not required to serve any further incarceration and he can begin his Court ordered period of supervised release.

First, since the 5K1.1 was granted and Mr. Garbin was sentenced, a second defendant in this case pled guilty and agreed to cooperate and testify against the remaining co-defendants. This cooperation was facilitated and secured, at least in some significant way, by Mr. Garbin's cooperation, testimony before the Grand Jury, and guilty plea. The value to the Government from the additional cooperation and testimony of Caleb Franks cannot possibly be valued. In addition to leading to the guilty plea of a second Co-defendant, it was followed by the testimony at trial of that Co-defendant. This not only bolstered the credibility of Mr. Garbin and all the other Government witnesses, but allowed the Government to refute any suggestion

that Mr. Garbin was a rogue or renegade co-defendant, creating a story out of thin air, simply to help his own self-interest.

Furthermore, Mr. Garbin's testimony at both trials was compelling, forthright and a critical part of the Government's case. Since the 5K1.1 was granted, Mr. Garbin has participated in at least two, in person, detailed proffers in preparation of the first trial, testified at that first trial, participated in a third in person, detailed proffer in preparation for the second trial, and testified at the second trial. For this cooperation, Mr. Garbin was not given a Rule 35 Motion, nor any credit for this additional cooperation by way of testifying at that first trial.

Second, although Mr. Garbin testified at two trials, the Government's motion only seeks a reduction commensurate with a reduction that a government witness would receive after testifying in a ***single***, ***solitary***, run-of-the-mill trial, let alone testifying at two separate trials.

And this was no run-of-the-mill trial. The trial was described by the New York Times as "one of the country's highest-profile domestic terrorism prosecutions." New York Times, "Two Men Convicted in Plot to Kidnap Michigan's Governor," August 23, 2022.[2] In fact, both trials were of critical importance – not only to the Department of Justice's efforts to combat domestic terrorism, but, perhaps, more

---

[2] Available at https://www.nytimes.com/2022/08/23/us/verdict-trial-gretchen-whitmer-kidnap.html.

importantly, to protect democracy itself from extremists who threaten to use violence to overthrow our government. Mr. Garbin himself testified to the fact the threats posed by the defendants were "very real and very dangerous," as the US Attorney's Office said after the trial. *See* Press Release, Department of Justice, August 23, 2022.[3]

The second trial was arguably of even greater importance to the Department of Justice, given the defendants' repeated attempts to undermine the integrity of the investigation, and repeated assertions that the Government framed or entrapped the defendants. These assertions received national press coverage, and permeated the entire trial. After the first trial failed to result in any convictions, these assertions surely eroded public trust in the Government, the Department of Justice and the FBI, at a critical time in this country's history, that is, when the government was confronting an unprecedented number of violent attacks on itself and its elected democratically elected representatives. *See, e.g.*, New York Times, "As Right-Wing Rhetoric Escalates, So Do Threats and Violence," August 15, 2022.[4]

Mr. Garbin's testimony was a key in refuting the defendant's assertions that they were framed or entrapped by the Government. As one of the few firsthand, non-

---

[3] Available at https://www.justice.gov/usao-wdmi/pr/2022_0823_Fox_et_al.

[4] Available at: https://www.nytimes.com/2022/08/13/nyregion/right-wing-rhetoric-threats-violence.html.

governmental participants in the plot, Mr. Garbin took the stand and testified that, contrary to the defendants' assertions, the plot was real and he was not entrapped somehow by the government. Mr. Garbin has been described as the "star witness" in the Government's case, and the importance of his testimony can hardly be overstated. Detroit Free Press, "Feds' star witness Ty Garbin testifies against his cohorts in Whitmer kidnap plot trial," March 23, 2022.[5]

Mr. Garbin's cooperation is not over yet either. He continues to cooperate with the Government, in the state court prosecution of others involved in the plot who were not charged federally. That prosecution is led by the Michigan Attorney General's Office and Mr. Garbin is a key witness in that case. The Attorney General's Office has already spent three hours with Mr. Garbin preparing for that trial, which is set to occur in October. Mr. Garbin will continue to cooperate with this prosecution, even if he is no longer incarcerated.

Mr. Garbin has demonstrated time and time again — from his decision to plead guilty early (even before receiving Rule 16 discovery), to his willingness to cooperate when nobody else would, to his steadfast cooperation even though the first trial resulted in no convictions and two acquittals of his codefendants, to his willingness to cooperate even after the Government has filed its Rule 35 motion and

---

[5] Available at: https://www.freep.com/story/news/local/michigan/2022/03/23/ty-garbin-whitmer-kidnap-trial-witness/7140849001/.

there is mechanism for him to get "credit" for cooperating with the State after the Rule 35 is decided — that his motivation to cooperate is not simply to reduce his sentence, but also to atone for his past mistakes and rehabilitate his character by getting on the right side of the law.

In addition, Mr. Garbin deserves a sentence of time-served because of the grave danger he faces if he is imprisoned. The target that Mr. Garbin presents for extremists, prison gangs, or someone out to make a name for themselves cannot be ignored. The danger is real and will pervade everything Mr. Garbin does and everywhere he goes. For all that Mr. Garbin has done to assist the Government in this Case, and in the future, the state prosecution, he deserves to be allowed to reside in the safety of his own home.

Lastly, in ruling on the Rule 35 Motion this Court should remember that Mr. Garbin's acceptance of responsibility and show of remorse has been fundamental, sincere, genuine, and complete. The record is overwhelming that Mr. Garbin was not sorry for being caught, but rather for what he did and the harm he caused. This is illustrated by his plea of guilty less than two months after he was arrested, prior to even being indicted, and before the Government provided his lawyers with Rule 16 discovery. In addition to demonstrating that Mr. Garbin did the right thing, for the right reasons, his early cooperation and testimony before the release of Rule 16 discovery allowed the Government to make the argument at trial that Mr. Garbin

was not simply "parroting back" the Government case in chief or theory of prosecution found in that discovery. Instead, the Government could bolster Mr. Garbin's credibility before the jury, by pointing out that this story came out before Mr. Garbin knew what the Government "wanted him to say."

## CONCLUSION

For all of the forgoing reasons, Mr. Garbin respectfully requests this Honorable Court grant the Government's Rule 35 Motion, and sentence a sentence of no further incarceration.

Further, Mr. Garbin respectfully requests this Honorable Court schedule a hearing, where further arguments can be made by the Parties.

Respectfully Submitted:

S/ Mark A. Satawa_____
Mark A. Satawa P47021
SATAWA LAW, PLLC
Attorney for Defendant
26777 Central Park Blvd; Suite 300
Southfield, MI 483076
(248) 356-8320

S/ Gary K. Springstead
Gary K. Springstead P59726
Attorney for Defendant

                                              60 Monroe Center St.,NW #500  
                                              Grand Rapids, MI 49503  
                                              (231) 924-8700

Dated:  September 9, 2022